**MAUREEN C. CAIN**
**U.S. Department of Justice**
**Child Exploitation & Obscenity Section**
**1400 New York Ave.**
**Bond Building, 6th Floor**
**Washington, D.C. 20530**
**Phone: (202) 616-1685**
**Fax: (202) 514-1793**
**Email:  Maureen.Cain@usdoj.gov**

**CYNDEE L. PETERSON**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 8329**
**Missoula, MT 59807**
**105 E. Pine, 2nd Floor**
**Missoula, MT 59802**
**Phone: (406) 542-8851**
**FAX: (406) 542-1476**
**Email: Cyndee.Peterson@usdoj.gov**

**ATTORNEYS FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**MISSOULA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 13-30-M-DWM-01** |
| **Plaintiff,** | |
| **vs.** | **GOVERNMENT'S SENTENCING MEMORADUM** |
| **PAUL WENCEWICZ, SCOTT LONG, PHILLIP MORRIS, JOHN JOHNSON, STEVE HUMISTON, JEFFREY WOOLLEY, TONY BRONSON,** | (Paul Wencewicz) |

1

| CHARLES CROSBY, JOSEPH PURIFICATO, JOSHUA PETERSEN, STEVEN GROVO, IAN NOSEK, and ROBERT KRISE, | |
|---|---|
| **Defendants.** | |

| UNITED STATES OF AMERICA, | CR 14-14-M-DWM-01 |
|---|---|
| **Plaintiff,** | |
| vs. | **GOVERNMENT'S SENTENCING MEMORADUM** |
| PAUL WENCEWICZ. | |
| **Defendant.** | |

## POSITION OF THE UNITED STATES AS TO SENTENCING

The United States has reviewed the Probation Office's presentence report in this matter related to Defendant Paul Wencewicz's conduct on Bulletin Board 1 (hereinafter "KOFD") and Bulletin Board 2 (hereinafter "DMoon"), and does not dispute the calculation of the Sentencing Guideline range of life imprisonment. As described more fully below, the United States believes that a consideration of the applicable sentencing factors pursuant to 18 U.S.C. § 3553, along with the United States' agreement with Wencewicz in the plea agreement to seek a

concurrent sentence for both boards, warrants a sentence of thirty years' incarceration and a lifetime of supervised release.

## I.  NATURE AND CIRCUMSTANCES OF THE OFFENSES

### A. Wencewicz's Involvement With KOFD

Defendant Paul Wencewicz was a creator and administrator of KOFD, a web-based bulletin board used by all defendants to advertise, distribute, receive, and/or access with intent to view child pornography.  The images of child pornography included girls as young as toddlers and involved simulated masturbation and the lascivious exhibition of genitals.  In addition to the child pornography, the invitation-only bulletin board provided a means for members to discuss their sexual attraction to little girls and their desires to sexually abuse little girls.  Moreover, the bulletin board provided members a place of acceptance and encouragement for their sexually exploitive conduct.

KOFD was operational from November 2009 through March 2012, and had at least 44 members from all over the world.  The board was divided into numerous forums where images of little girls were organized by different categories or themes.  For example, one forum permitted images of girls "9yo and under" while another forum permitted images of girls "10yo to 15yo."   Other forums specified the type of attire that was permitted, including full nudity and "slips and see-throughs," where the clothing was either see-through or did not fully cover the

child's genitals.  Additional forums were dedicated to permitting members to

request images of "child models," including children who were victims of child

pornography.  If a member had such images, they posted the images to the board or

provided a link to a third party hosting site (where the member had uploaded the

images) which directed the members on where to find such images.  Child

pornography was found throughout the board.

KOFD also contained forums where security issues were discussed.  The

discussions included updates on whether various board members were arrested by

law enforcement and news articles discussing other child pornography bulletin

boards being prosecuted by the Department of Justice.  It also included tips on how

to encrypt one's digital devices and how to mask one's IP address while browsing

the internet to avoid law enforcement detection.

As described in the presentence report, KOFD was set up as an

organizational hierarchy where different members had different roles.  At the time

FBI accessed KOFD in March 2012, it showed three current Administrators:

namely Wencewicz/Member 1, Scott Long/Member 2, and Jonathan

Godson/Member 15.  The Administrators were involved with the set-up, design,

functioning, and view of the board.  They also reviewed and admitted new

members, made sure the board was secure from law enforcement and hackers,

advanced members to other parts of the board, and monitored the content of the

board by moving or deleting postings and closing threads from further communications on a particular topic.

KOFD also had two Moderators: namely Charles Crosby/Member 28 and Phillip Morris/Member 8.   Moderators were in charge of keeping "a close eye on the section they were responsible for" and had "the first say in any advancement by any member."   They were also supposed to delete objectionable images with a follow-up private message to the offending member.  Moderators were also involved in confirming members during the invitation process.

KOFD also had four Honorary Members, called Legionaires, which included Jeffrey Woolley/Member 19, Steve Humiston/Member 10, and Robert Krise/Member 5.   When promoted, the "honorary members" were told they had no additional responsibilities, however, they were instructed to keep an open line of communication with "the Staff" and help keep the board safe.  Administrators also sought the approval of the "honorary members" with extending invitations to new members and asked for their input on how to best operate the board.

All members of "the staff" and the "honorary members" were required to check in to a specific forum each time they visited the board to "reply to threads that require [their] attention" and "move things along."   The topics of discussion in the specific forum included invitations for potential members of the board, new "staff" members, advancements, and suspensions.

The remaining defendants were all castle residents or castle dwellers.  A castle resident had access to the upper levels of the board, while a castle dweller had access to lower forums of the board.  Child pornography was found in both the lower levels and upper levels of the board.

## B. Specific Instances of Wencewicz's Criminal Conduct On KOFD

While Wencewicz is responsible for all of the co-conspirators' conduct on KOFD, a few examples of Wencewicz's specific conduct are described below:

     i.   In December 2009, Wencewicz advertised and distributed child pornography when he posted numerous URL hyperlinks with preview images of a prepubescent girl wearing see-through black nylons.  She is not wearing underwear and is posing in a sexually provocative manner, exposing her genitals in some of the images.  Other members commented on the images.  It appears that Co-Conspirator Scott Long accessed the images on December 4, 2009, commenting: "She is such a little cutie!  This is a great set of her… Thank you!!!!"  Other members also commented on the images, including the comment: "hmmmm no panties underneath those tights of pantyhose…YESSS thanks [Wencewicz]."  On December 8, 2009, Co-Conspirator Steve Humiston stated: "I've always thought she and Ultra were the same girl.  Thank you for this post either way.  Psst! Keep posting the young ones.  Flat chests are sexy.  Thanks again."

     ii.   On January 9, 2010, Wencewicz advertised and distributed child pornography when he posted numerous URL hyperlinks and preview images of a minor girl wearing a skimpy, white, see-through thong, labeling the thread "The Ultimate See Thru Set – KATYA!"  Some of the images focus on the child's genital area.  The child is provocatively posed while putting baby oil on her body.  Twelve other members commented on the images including the following: "Have indeed seen it, but am not complaining!  Not such a fan of baby oil pics, but I'm certainly a Katya fan! Many thanks!" On January 9, 2010, Member 2 replied stating: "I'm with [another member name] on the baby oil subject but given it's Katchka … well she is a well oiled

machine…"  On that same day, Co-Conspirator Jeffrey Woolley stated: "Jaw dropping set [Wencewicz].  Baby oil and a Beautiful girl what a combination."  Co-Conspirator Phillip Morris also replied on that same date stating: "Talk about all kind of SEXY!  This set is superb.  If she needs any help applying that oil I can definitely clear up my schedule for her."

iii.  On May 18, 2010, Wencewicz advertised and distributed child pornography by posting URL hyperlinks with preview images which he described as being "200 long" and "some serious see through pantie shots".  Two of the images depict a child exposing her genital area through see-through thong underwear.  On May 19, 2010, Co-Conspirator Phillip Morris replied to the post: "This is a superb download and fantastic set.  [Wencewicz] is right to recommend this set, there will be no disappointment with the treats she shares with us."  On May 31, 2010, Co-Conspirator Steve Humiston replied: "She is hot.  Thank you for sharing."

iv.  On April 23, 2011, Wencewicz advertised and distributed child pornography by posting numerous URL hyperlinks which he described in the post as "COMPLETELY nude from the first picture to the last."  When the URL hyperlinks were accessed, members were able to view images of child pornography, showing what appears to be a minor female completely nude and posing in a manner where her genitals are displayed for the camera.  Eight members posted comments to the thread.  On April 24, 2011, Co-Conspirator Bronson stated: "Very nice!  Thanks [Wencewicz] and [another member name]!"  Co-Conspirator Phillip Morris stated: "WOWSERS!!! I think her breasts are just about the perfect size.  I have nothing against larger bosoms like those of the sexy sisters Mari and Sherri, but at the end of the day it is a teen built like Alina here that can really turn my head.  This set is new to me and many thanks for such a superb share. She is in my top tier of Vlad."

## C. Wencewicz's Obstruction Of Justice As To KOFD

In March 2012, FBI obtained a search warrant on Wencewicz's residence after tying his email address to fifteen NCMEC Cybertip reports regarding child

pornography he posted on various social networking sites, along with Wencewicz communicating and exchanging images with a known producer of child pornography in Colorado.

FBI executed the search warrant on March 15, 2012.  After the search warrant execution, Wencewicz tipped off other board members.  For example, he sent two emails on March 16, 2012, to another member of the board with the subject line "kill bugs dead," a tagline for the insecticide product "Raid."  In the email Wencewicz stated, "taking a serious chance letting you know this.  The worst imaginable has happened.  no longer have access to my email or my forum. they have been taken over by others.  its bad [user name].  read bad. close all my accounts & send a heads up."  *See* record attached hereto as Gov't Ex. 1. [1]  As a result, Wencewicz's message was relayed to co-administrator Jonathan Godson who then deleted most of the online contents of KOFD.  The deletion of the online contents hindered FBI's efforts to quickly analyze additional criminal activity on the board and arrest numerous child pornography offenders, including contact offenders.  Fortunately, FBI was able to obtain a back-up copy of the board but

---

[1] Gov't Ex. 1 was attached to Co-Conspirator Robert Krise's forensic reports produced to all defendants and depicts a chat from a different board involving several of the same co-conspirators.  In addition to the two emails, Wencewicz also discussed the search with Krise over the phone on or about March 22, 2012. Moreover, Wencewicz admitted to discussing the search with Co-Conspirator Scott Long several months after the search.

agent had to undergo numerous steps to extract the data from the back-up copy and obtain the images from multiple third party sites.  This resulted in substantial delay.

### D. Wencewicz's Involvement With DMoon

Wencewicz was also a member of the Dark Moon ("DMoon"), an invitation-only online forum that allowed members to advertise, distribute, receive, and access child pornography.  DMoon had over 100 members from all over the world and was started around September 2011.  The rules of DMoon required members to post images and videos of girls ages 4-15.  The board was separated into various sections and sub-forums.  One main section allowed for clothed images of minor females, which included "slips" and "see through" images where minor females wore see-through underwear or thongs that did not fully cover their pubic and genital region.  A second main section permitted "advanced members" to post "nude" images and videos, which included minor females engaged in masturbation, vaginal penetration with dildos, oral sex, and the lascivious exhibition of genitals.  If members did not post images within a certain time period, they were suspended by the administrators and moderators.

Wencewicz became a member of the DMoon on or about October 28, 2011 and last posted on or about November 10, 2011.  He was subsequently deleted from the board that same month.  While on the board, he was an "advanced

member" and posted twenty-one "LS" videos, including preview images showing the lascivious exhibition of minor girls' genitals.  He also posted two sets and a video connected to BD Company, a known purveyor of child pornography, but law enforcement did not recover the materials.  After Wencewicz's membership from DMoon was deleted in 2011, he continued to advance DMoon in January 2012 by permitting a member to post a link to DMoon on KOFD.  Wencewicz also encouraged members of KOFD to check out DMoon once the link was posted.  Moreover, when members of KOFD sought admission onto DMoon, they used Wencewicz's username as a reference.

## II. HISTORY AND CHARACTERISTICS OF WENCEWICZ

Wencewicz has at least five prior arrests and multiple convictions for driving under the influence of alcohol.  The arrests and convictions occurred in numerous states, including Illinois, New York, Montana, and Idaho.  Disturbingly, Wencewicz has demonstrated a pattern of failing to appear for court by moving to new states after such arrests, which ultimately led to the dismissal of some of his charges.  (*See* PSR ¶¶ 169, 174).   This pattern of activity raises concerns regarding Wencewicz's future compliance with SORNA once he is released from prison.

While Wencewicz does not have prior convictions involving child exploitation, the evidence shows him engaging in child exploitation crimes for the past several years, including his involvement on numerous child exploitation

boards, along with the distribution and receipt of child pornography through his email account.  Moreover, his collection of child pornography included images depicting sadistic and masochistic abuse.

Incredibly, Wencewicz has informed probation that he did not obstruct justice in this case, and that he did not send an email to a board member notifying that member that FBI searched his residence and took over his accounts.  (*See* PSR Objection #3).  As seen in Government Exhibit 1 and described above, the evidence contradicts Wencewicz's claim and his dishonesty shows his lack of acceptance of responsibility for his actions.

Wencewicz's letter to the Court also demonstrates a lack of responsibility through his minimization of his conduct.  In Wencewicz's letter to the Court, he states, "Until a dividing line is established in Law between Digital/Virtual Crimes and Physical Crimes, I must accept that I will be labeled a sex offender during my time in prison and for the rest of my life afterwards, but I will always know in my heart and soul that I would never intentionally hurt anyone."  (*See* PSR ¶ 134). Contrary to Wencewicz's assertion, he hurt countless children by creating a forum and participating in other forums where individuals were permitted and encouraged to advertise, distribute and receive humiliating images of sexual abuse that numerous little girls endured.

## III.   SERIOUSNESS OF THE OFFENSE, PROMOTION OF RESPECT FOR THE LAW, AND PROVISION OF JUST PUNISHMENT

Wencewicz's child pornography offenses are undoubtedly serious offenses. The harm to children depicted in child pornography was recognized years ago by the United States Supreme Court in *New York v. Ferber*, 458 U.S. 747, 758 (1982). In *Ferber*, the Supreme Court noted that, in the judgment of state and federal legislators, as well as authors of relevant literature, "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." *Ferber*, 458 U.S. at 758 (citations omitted).  The *Ferber* court also observed that the "[pornographic] materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." *Id.* at 759 (citation omitted).  Furthermore, the court stated:

> Pornography poses an even greater threat to the child victim than does sexual abuse or prostitution.  Because the child's actions are reduced to a recording, the pornography may haunt [the victim] in future years, long after the original misdeed took place.  A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography… It is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions.

*Id.* at 759 & n. 10 (citations omitted).  *See also Osborne v. Ohio*, 495 U.S. 103,

109-10 (1990) (reaffirming *Ferber* in case involving possession of child

pornography).

In 2002, the United States Supreme Court again acknowledged the harm to

victims depicted in child pornography and observed that a new harm is caused each

time the images are shared with someone different.  *See Ashcroft v. Free Speech*

*Coalition*, 535 U.S. 234, 249 (2002).  In *Free Speech Coalition*, the Court noted

that "as a permanent record of a child's abuse, the continued circulation itself

would harm the child who had participated.  Like a defamatory statement, each

new publication of the speech would cause new injury to the child's reputation and

emotional well-being."  *Id.* at 249.

Courts have noted at least three specific harms inflicted on the children

depicted in the pornographic images:

> First, the simple fact that the images have been
> disseminated perpetuates the abuse initiated by the
> producer of the materials.  [T]he materials produced are a
> permanent record of the children's participation and the
> harm to the child is exacerbated by their circulation.  The
> consumer who "merely" or "passively" receives or
> possesses child pornography directly contributes to this
> continuing victimization.
>
> Second, the mere existence of child pornography
> represents an invasion of the privacy of the child
> depicted.  Both the Supreme Court and Congress have
> explicitly acknowledged that the child victims of child

pornography are directly harmed by this despicable intrusion on the lives of the young and the innocent. The recipient of child pornography obviously perpetuates the existence of the images received, and therefore the recipient may be considered to be invading the privacy of the children depicted, directly victimizing these children.

Third, the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials…[T]here is no sense in distinguishing, as [Defendant] has done, between the producers and the consumers of child pornography. Neither could exist without the other. The consumers of child pornography therefore victimize the children depicted in child pornography by enabling and supporting the continued production of child pornography, which entails continuous direct abuse and victimization of child subjects.

*United States v. Norris*, 159 F.3d 926, 929-30 (5th Cir. 1998); *see also United States v. Blinkinsop*, 606 F.3d 1110, 1118 (9th Cir. 2010) (describing harms inflicted upon children depicted in images of child pornography distributed and possessed by others).

As described in the letters submitted to this Court, the actual children depicted on these boards are greatly harmed by the advertisement and circulation of their images of sexual abuse.  For example, one mother of a young girl (whose images were shared on KOFD) writes in part:

From 2002-2003, my daughter was abused repeatedly to produce images for the purposes of being traded/shared

14

over the internet.  Without a market to receive and trade
those images, without the encouragement of those who
wanted to acquire the images, I truly believe this abuse
would not have occurred.

All those who trade these images and thereby create the
demand for lurid and violent depictions of children are
participants in the exploitation of my daughter.  Each
traded picture that placed a value on inventiveness,
novelty, or cruelty played a role in egging on the abuser
to even more vile acts.
…
My daughter was exploited, not only by an individual,
but also by an industry that consumes and destroys
innocent children.

Producer, distributor, and consumer – everyone who
participates in this evil exchange helps create a market,
casting a vote for the next abuse.  Regardless of whether
they directly abused children themselves, received in the
images of suffering, or persuaded others to abuse
children on their behalf (to provide images of the abuse)
each participant has a responsibility for the effects.
…

If I had my way, each and every image of my daughter's
sufferings would be burned.  Then she would no longer
have to worry about those images being used to further
hurt or humiliate her.  But as it is, there are those who
have no shred of decency, and continue to copy and pass
on these pictures.  Each person who callously passes
those sickening pictures is exposing my daughter to
further shame and humiliation.
…
I can find no words to express the fury I feel at those who
participate in this evil or my scorn for any attempt to
minimize the responsibility by feeble claims that the
crime was "victim-less."  My daughter is a real person.
She was horribly victimized to provide this source of

15

> "entertainment."  She is exploited anew each and every time an image of her suffering is copied, traded, or sold.  While the crime is conscienceless, it is hardly "victim-less."
>
> I asked my daughter what she most wanted to ask the judge.  Her request: "Please, don't let them pretend that no-one's getting hurt!"
>
> She had the same words for the defendant as well: "don't you know no one should do that to a little girl!  Don't you know it hurts!"

*See* Victim Impact Statement letters filed under seal.

In another letter, a victim (whose images were also shared on KOFD)

describes the sexual abuse she endured at a very young age and states in part:

> There is a lot I don't remember, but now I can't forget because the disgusting images of what he did to me are still out there on the internet.  For a long time I practiced putting the terrible memories away in my mind. ....Every day of my life I live in constant fear that someone will see my pictures and recognize me and I will be humiliated all over again.  It hurts me to know that someone is looking at them – at me- when I was just a little girl being abused for the camera.  I did not choose to be there, but now I am there forever in pictures that people are using to do sick things.  I want it all erased.  I want it all stopped.  But I am powerless to stop it just like I was powerless to stop my uncle [who sexually abused her].

*Id.*

Contrary to Wencewicz's statement that he would never hurt anyone, the

harsh reality is he hurt numerous children through his actions.  By creating KOFD,

he fulfilled both ends of the supply and demand chain of the child pornography market.  His board supplied images of child pornography for others to see and praise.  His board also allowed members to request images of child pornography and permitted others to supply such images.  As to DMoon, he further harmed children through his advertisement and distribution of child pornography, while encouraging others on KOFD to become members of DMoon.

As to additional sentencing factors for this Court to consider, there is a strong need to promote respect for the law through an adequate punishment for Wencewicz.  As the evidence in this case shows, Wencewicz took steps to have KOFD and his other accounts shut down so FBI could not further investigate his actions.  Moreover, in the drunk-driving context, Wencewicz has been arrested numerous times and has failed to appear for various court appearances by moving to new states shortly after his arrests.  He has demonstrated disrespect for the law on numerous occasions and a lengthy sentence is warranted.  As to a provision of just punishment, the United States submits that thirty years' incarceration is an appropriate punishment, along with a lifetime of supervised release.

## IV.  THE NEED TO DETER FUTURE CRIMES AND TO PROTECT THE PUBLIC

Based on the nature of Wencewicz's crime and conduct, there is a compelling need to deter future similar conduct by him and other like-minded

individuals with an interest in child pornography.  There is a compelling need to cut off the supply and demand in the child pornography market in order to protect children from being re-victimized through the repeated advertisement, viewing and distribution of the sexual abuse they endured.  There is also a compelling need to prevent new children from being victimized for the camera.  Wencewicz has had numerous encounters with law enforcement yet refuses to live a law-abiding life.  Accordingly, the United States believes that thirty years' incarceration is an appropriate sentence, along with a lifetime of supervised release.

## V. RESTITUTION FOR "ANGELA" AND "JAN-FEB"

### A. Facts Related To Images of "Angela" and "Jan-Feb" on KOFD

As described in the materials attached to the presentence report, two victims of child pornography known as "Angela" and "LS" (from the "Jan-Feb" series)  are seeking restitution in this matter.  Images of "Angela" and "LS" were advertised, distributed, and viewed on KOFD within the same thread.  An additional thread on KOFD contained more images of "LS."

As for the thread containing images of both "Angela" and "LS," on April 4, 2010, Co-Conspirator Steve Humiston started a thread in an upper room of the board with the title "Hot Mix #1 with preview" and the description "Lots of Non-Studio Work."  In his opening post, Humiston stated, "Wanted a stronger password for this series" and posted a collage preview image showing nude, prepubescent

18

children posed seductively.  He also provided a password, along with a link to

*rapidshare* so members could download a .rar file with over 100 images of child

pornography, including at least one image of "Angela" and one image of "LS."

Data from the board indicates that there were 29 views of this thread, although the

data does not provide the names of every member who viewed the thread.[2]

That same day, Wencewicz replied to Humiston's thread stating, "Just when

you thought the Master of Mixes couldn't top himself, a post like this appears!  If

anybody is looking for a montage of nudes that pretty much covers it all, it's in

here.  [Humiston] PM'd his idea for this post.  I was assured that it would be well

within the Rules & it is.  There are a few pics from smaller agencies, but for the

most part, most are out of the ordinary.  Some of you will recognize some of these,

but there are many that are new to me.  Nice job [Humiston]!  I look forward to the

next installment."

On April 13, 2010, User 22 replied stating, "The art of youth as much as our

disillusioned society can only be recreated by having child like humility and

original innocence from hypocrisy; ego.  Yet, the 1 thing that is lost forever is the

beauty of youth.  The multi-billion dollar international industry of anti-aging

techniques will never come close to reversing the curse of wear & tear and age.

---

[2] Moreover, if the same person viewed the thread twice, two views will be
registered, even though it was viewed by the same person.

lol.  Still a lot of people think it works.  They spend too much on it to be free to doubt it.  The art of youth my friend, good work!"

On April 13, 2010, Co-Conspirator Phillip Morris also replied stating, "Well said [User 22]!  The innocent perfection within the beauty of youth cannot be denied, only admired.  Many thanks [Humiston], this looks to be very interesting!"

The images of "Angela" and "LS" within that thread remained available on the board from April 4, 2010 until on or about March 19, 2012 when KOFD was torn down by a co-conspirator.

Two additional images of "LS" were distributed by Humiston on May 4, 2010, when he started a new thread titled, "Special Hot Mix #4" in Legion's Lounge.   In his opening post, Humiston attached a preview image showing numerous nude, prepubescent girls in various poses, along with a url to obtain a rar file containing numerous images of child pornography.   That same day, co-administrator Jonathan Godson replied, "Loving the specials [Humiston]."   On May 8, 2010, an uncharged board member replied, "awesssssssssssssssum.  Thank you!"

According to data from the backup copy of the board, the thread had 43 views. The two images of "LS" remained available through KOFD from May 4, 2010 until March 19, 2012 when the board was taken down.   During that time

frame, all defendants in this matter had access to the images of Angela and "LS" in the upper part of the Board, with the exception of Defendant Ian Nosek.

## B. Restitution Legal Standard

In child pornography cases, restitution is mandatory to any person "harmed as a result of" a defendant's crime pursuant to 18 U.S.C. § 2259.  *See* 18 U.S.C. § 2259(a), (c).  Restitution includes "the full amount of the victim's losses," which may include any costs incurred by the victim for:

(A)   Medical services relating to physical, psychiatric, or psychological care;

(B)   Physical and occupational therapy or rehabilitation;

(C)   Necessary transportation, temporary housing, and child care expenses;

(D)   Lost income;

(E)   Attorneys' fees, as well as other costs incurred; and

(F)   Any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(a), (b)(3).

In *Paroline v. United States*, 134 S. Ct. 1740 (April 23, 2014), the United States Supreme Court faced a circuit split over the interpretation of 18 U.S.C. § 2259, specifically over "how to determine the amount of restitution a possessor of child pornography must pay to the victim whose childhood abuse appears in the pornographic materials possessed."  *Paroline*, 134 S. Ct. at 1716.  In *Paroline*, the

defendant possessed two images of the victim who was seeking restitution.  The Court's answer to this question involved three steps.

First, *Paroline* held that, because the statute defined a "victim" as someone "harmed as a result" of the offense, restitution under § 2259 was proper "only to the extent the defendant's offense proximately caused a victim's losses."  *Id*. at 1722.

Second, the Court held that "proximate cause" under § 2259 did not require strict but-for causation.  *Id*. at 1726-27.  Recognizing that under the circumstances of most child pornography possession cases – where losses resulted from harm caused by the trafficking of a victim's images by numerous "geographically and temporally distant offenders acting independently, and with whom the defendant had no contact," *id*. at 1725, - the Court held:

> In this special context, where it can be shown that a defendant possessed a victim's images and that a victim had outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses.

*Id*. at 1727.  The Court made clear that, where the victim's losses are "the product of the acts of thousands of offenders," a restitution order should not be "too

severe" but must not be merely "a token or nominal amount." *Id.* That is, in part,

because a restitution order under § 2259 serves "twin goals," the first being to

"help[] the victim achieve eventual restitution for all her child-pornography losses"

and second to "impress[] upon offenders the fact that child pornography crimes,

even simple possession, affect real victims." *Id.*

Third, the Court provided sentencing courts the following guidance for how

to determine the proper amount of restitution under this standard. *Id.* The Court

noted that a sentencing court's goal should be to assess "the significance of the

individual defendant's conduct in light of the broader causal process that produced

the victim's losses," taking into account any "available evidence." *Id*. at 1727-28.

The Court emphasized that there is no "precise mathematical inquiry" governing

this determination and that district courts must exercise "discretion and sound

judgment" in fashioning restitution awards. *Id*. at 1728. The Court suggested

several factors to be considered, including: (1) the number of defendants convicted

of possessing the victim's images; (2) the number of future offenders likely to be

caught and convicted; (3) whether the defendant had any role in the initial

production of the images; (4) whether the defendant reproduced or distributed the

images; (5) how many images the defendant possessed; and (6) "other facts

relevant to the defendant's relative causal role." *Id*. "These factors need not be

converted into a rigid formula, especially if doing so would result in trivial

restitution orders.  They should rather serve as rough guideposts for determining an amount that fits the offense."  *Id*.

In the present case, the defendants worked together to advertise, distribute, receive, and access with intent to view child pornography through their involvement on KOFD.  Members routinely praised and encouraged each other to post images of child pornography, so that all members of KOFD could "benefit" by commenting on, viewing and/or downloading the images.

As a creator of KOFD, Defendant Wencewicz provided the platform for the images of "Angela" and "LS" to be advertised, distributed, viewed, and received by other members of KOFD.  As an administrator, he could have taken down the images if he found it offensive.  Rather than take down their images and other similar images of child sexual abuse, he specifically praised co-Defendant Humiston for numerous images he posted, allowing images such as "Angela" and "LS" to remain on the board for over two years with numerous views.  Such conduct is a proximate cause of the harm that "Angela" and "LS" endure knowing that their images are being displayed and viewed by others who take a perverse pleasure in their sexual exploitation.

To date, Angela has obtained restitution orders connected to 19 defendants convicted of possessing, receiving, and/or distributing her images.  "LS" has obtained restitution orders connected to 149 defendants convicted of possessing,

receiving, and/or distributing her images.  *See* restitution charts attached hereto as Gov't. Exs. 2 and 3.  The United States asks that this Court shape an appropriate restitution award of at least $3,000 per victim to be paid by Wencewicz.

## <u>CONCLUSION</u>

For the foregoing reasons, the United States respectfully requests that Wencewicz be sentenced to a term of imprisonment of thirty years' incarceration in each of these cases which the government believes is consistent with the Sentencing Guidelines and § 3553 factors.  The United States asks the Court to run the terms of imprisonment concurrent with each other and also seeks a lifetime of supervised release.  The United States also requests the Court order Wencewicz to pay restitution for "Angela" and "LS" in the amount of at least $3,000 per victim.

DATED this 9th day of October, 2014.

MICHAEL W. COTTER
United States Attorney

*/s/ Cyndee L.  Peterson*
Assistant U.S. Attorney
MAUREEN C. CAIN
DOJ Trial Attorney

## CERTIFICATE OF COMPLIANCE

Pursuant to D. Mont. L.R. 7.1(d)(2) and CR 47.2, the attached brief is proportionately spaced, has a typeface of 14 points or more, and the body contains 5,566 words.

*/s/Cyndee L. Peterson*
Assistant United States Attorney
Attorney for Plaintiff