

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PAUL WENCEWICZ, SCOTT LONG, STEVE HUMISTON, PHILLIP MORRIS, TONY BRONSON, JEFFREY WOOLLEY, CHARLES CROSBY, JOHN JOHNSON, JOSEPH PURIFICADO, IAN NOSEK, JOSHUA PETERSEN, STEVEN GROVO, and ROBERT LEE KRISE,<br><br>Defendants. | CR 13–30–M–DWM<br><br>OPINION and ORDER<br>on RESTITUTION |

**LEGAL STANDARD**

"Enacted as a component of the Violence Against Women Act of 1994, [18 U.S.C.] § 2259 requires district courts to award restitution for certain federal criminal offenses," including offenses involving child pornography. *Paroline v. United States*, ___ U.S. ___, 134 S. Ct. 1710, 1716 (2014). Section 2259 requires district courts to order defendants "to pay the victim . . . the full amount of the victim's losses as determined by the court" and expressly states that "[t]he issuance of a restitution order under this section is mandatory." 18 U.S.C. §

1

2259(b)(1), (b)(4)(A). The statute defines the phrase "full amount of the victim's losses" to include:

> any costs incurred by the victim for–
> (A) medical services relating to physical, psychiatric, or psychological care;
> (B) physical and occupational therapy or rehabilitation;
> (C) necessary transportation, temporary housing, and child care expenses;
> (D) lost income;
> (E) attorneys' fees, as well as other costs incurred; and
> (F) any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(3).

Prior to *Paroline*, there was a Circuit split regarding the causal relationship required to award restitution in a child pornography case. The Ninth Circuit, along with most others, held that § 2259 requires the government to establish proximate causation; *i.e.*, "a causal connection between the defendant's offense-conduct and the victim's specific losses." *United States v. Kennedy*, 643 F.3d 1251, 1262 (9th Cir. 2011); *see also Paroline*, 134 S. Ct. at 1719 (citing cases). However, the Fifth Circuit "held that § 2259 did not limit restitution to losses proximately caused by the defendant, and each defendant who possessed the victim's images should be made liable for the victim's entire losses from the trade in her images, even though other offenders played a role in causing those losses."

*Paroline*, 134 S. Ct. at 1718 (summarizing and citing *In re Amy Unknown*, 701 F.3d 749, 772–74 (5th Cir. 2012) (en banc)).

In *Paroline,* the Supreme Court vacated the decision of the Fifth Circuit and rejected the argument that a defendant convicted of possessing child pornography could be held liable for the full amount of a victim's losses. Instead, the Supreme Court imposed a standard of proximate causation: "Restitution is therefore proper under § 2259 only to the extent the defendant's offense proximately caused a victim's losses." *Id.* at 1722. At the same time, the Court disavowed a strict, "but-for" causation standard, reasoning that the purposes of § 2259, the unique harm suffered by child pornography victims, and the "atypical causal process" underlying the victims' losses supported the adoption of a more flexible causation approach. *Id.* at 1723–24. The Court ultimately held that

> where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses.

*Id.* at 1727. The Court outlined a number of factors a court may—but is not required to—consider in determining a defendant's relative role, including:

> [T]he number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of

3

whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

*Id.* at 1728.

ANALYSIS

Restitution requests have been made in this case for two victims identified in images present on the KOFD board, "Angela" and "L.S." Angela has requested restitution in the amount of $12,100.20-$16,520.20 per defendant. L.S. has requested restitution in the amount of $150,000 per defendant. The Government has requested restitution in the amount of $3,000 for each victim, but has provided no justification for such an award under either the *Paroline* or any other framework. As the government's amount requested appears to be entirely arbitrary, it cannot be granted. *See United States v. Miner*, 2014 WL 48162301, at *9 (N.D.N.Y. Sept. 25, 2014) (rejecting the government's unsubstantiated $3,000 request). Applying the three-step process from *Paroline*, the defendants are jointly and severally liable for a restitution award of $29,859.00 to Angela. L.S.'s request for restitution is denied.

A. **The defendants received/possessed the victim's images.**

Here, the government has presented evidence that one image of Angela and three of L.S. were on the KOFD board at some point. The government has also presented evidence that one thread (containing one image of Angela and one of

L.S.) was viewed 29 times and another thread (containing two images of L.S.) was viewed 43 times. In their individual sentencing memoranda, the defendants consistently argue that because the government cannot prove that they individually viewed, downloaded, or shared the images, the necessary nexus between them and the images does not exist. This argument is unpersuasive. In determining whether a defendant received or possessed a victim's images, the government does not need to prove that an image was actually opened or viewed by the defendant; possession of an image is sufficient. *Paroline*, 134 S. Ct. at 1727; *Miner*, at *6; *United States v. Reynolds*, 2014 WL 4187936, at *5 (E.D. Mich. Aug. 22, 2014); *United States v. Hernandez*, 2014 WL 2987665, at *5 (E.D. Cal. July 1, 2014). This leaves the question in the present case of whether the presence of the images on the KOFD board as a whole, as opposed to in any of the individuals' private collections, is sufficient to justify possession. It is. As part of the conspiracy to advertise child pornography, all defendants are accountable for the images depicting child pornography on the KOFD board. *United States v. Laney*, 189 F.3d 954, 965 (9th Cir. 1999) (defendant "pled guilty to participating in a conspiracy[,] and the reasonably foreseeable actions taken by his coconspirators in furtherance of the conspiracy" were properly attributed to him).

**B.     Total amount of the victim's losses caused by the continuing traffic in the victim's images.**

The total amount of a victim's losses caused by the continuing traffic in the

victim's image is determined by looking to costs incurred from the time of the offense conduct and excluding those costs incurred prior to that date. *United States v. Rogers*, 758 F.3d 37, 39 (1st Cir. 2014). In order to effectively determine what general losses are attributable to the offense conduct of a particular defendant, courts should separate such losses from those caused by the initial abuser and those caused by other viewers of the images. *Id.*; *Reynolds*, at *5 (stating that a defendant is not responsible for costs predating the offense conduct as he is only liable for harms arising out of the "continuing traffic" of the images); *Miner*, at *8 (holding that general losses must be sufficiently disaggregated from losses caused by the initial abuser when determining those losses caused by the "continuing traffic" of the images); *United States v. Watkins*, 2014 WL 3966381, at *7 (E.D. Cal. Aug. 12, 2014). The disaggregation of costs is not necessarily a brightline however, and the continued harm and abuse arising out of the viewing of child pornography images may be part of a continuing, concerted harm. *Compare United States v. Sanders*, ___ F. Supp. 3d ___, 2014 WL 5033280, at *8 (N.D. Ga. Oct. 9, 2014) (holding that the psychological injuries related to the initial abuse were not sufficiently disaggregated from those arising from the viewing of the images because the counselor's report did not show the victim suffered any harm from the continued viewing and/or spread of the images) *with United States v. Galan*, 2014 WL 3474901, at *7 (D. Or. July 11, 2014) (refusing to require disaggregation when the harms from the initial abuse and those from the

continued traffic of the images were continuing and specifically addressed in the psychological report).

Numerous courts have determined loss in light of the "continuing traffic" of an image post-*Paroline*. Having reviewed these decisions, the following equation is used to determine general losses:

> The amount of psychological treatment/counseling costs following the offense conduct;
>
> PLUS
>
> Educational and/or vocational losses following the offense conduct;
>
> MINUS
>
> Those costs directly related to another defendant or litigation;
>
> PLUS
>
> Costs arising after the offense conduct that are impossible to trace to an individual defendant alone (e.g., cost of evaluation)
>
> = General Losses.

*See Watkins*, at \*\*5-7; *Hernandez*, at \*\*6-8.

### 1. Angela

Angela has requested restitution from each defendant in the amount of $11,980.20–$16,400.20. There was one image of Angela found on the KOFD board available from April 4, 2010, until March 19, 2012, and there were 29 views of the thread containing the image. According to the submissions of the government, 19 restitution orders have been issued for Angela. An expert report

dated March 10-11, 2014, shows that Angela suffers from psychological injuries including post-traumatic stress, major depressive disorder, and unspecified attention deficit disorder as a result of the sexual abuse documented in her images found online. These psychological injuries have been and continue to be aggravated by the continued distribution and online viewing of her abuse. Although focusing primarily on the resulting harms and costs from her initial abuse, the report submitted by Alexandria H. Doyle, Ph.D, shows that the costs associated with Angela's continued treatment and care are at least in part related to the continuing traffic in her image, as she "is fearful that . . . the consumers of pornography in which she is the object will find her and rape her." (Report at 3.) The knowledge that other men have her photos and the notification of such possession "creates distress for her mother as well as her as she is reminded of being abused and exploited. She feels saddened that she is the object of other's perversions and worries about the risks it poses to her. This contributes to the feeling that additional trauma could face her." (*Id.* at 4.)

Counsel for Angela has submitted documentation estimating her total covered losses over the next twenty years to be $183,000 to $293,000 and, over her lifetime, $366,000 to $587,000. (Rest. Request at 4.) The monetary data is dated March 2014. Taking the mid-point of the $366,000 to $587,000 range estimated by Dr. Doyle, the Court finds Angela's future treatment costs to be $476,500. *See Watkins,* at *6 (taking the average of the high/low estimates

submitted by the victim); *Hernandez*, at *9 (same). Angela has not made any request for education or vocational losses. Similarly, there is no indication that any of the costs provided are directly related to another defendant or litigation and she has not presented any post-conduct costs that are impossible to trace to any individual victim alone. Accordingly, the total amount of Angela's general losses is $476,500.

Angela has provided an estimated amount in attorneys' fees and costs arising out of this restitution request alone of $4,780.20. This amount is supported by the affidavit of her counsel, which includes an itemized breakdown of the costs associated specifically with the request in this case, although it is the same across all the KOFD defendants. Because attorneys' fees (unlike the psychological injuries Angela suffered) are traceable to particular cases involving specific defendants, they are not included in the general losses to be apportioned. *See Paroline*, 134 S. Ct. at 1727. These case-specific costs are added after the general losses are apportioned.

2. **L.S.**

L.S. has requested restitution from each defendant in the amount of $150,000. There were three images of L.S. found on the KOFD board, one image available from April 4, 2010, until March 19, 2012, with 29 views of the thread and two images available from May 4, 2010, until March 19, 2012, with 43 views of the thread. According to the National Center for Missing and Exploited

Children (the "Center"), this series has been actively traded since 2005. (Rest. Request at 2.) Analysts from the Center have encountered the "Jan_Feb" series in over 5,000 evidence reviews submitted by law enforcement and the series is recognized by law enforcement authorities as "one of the most prolific and widely-traded images series via the internet." (*Id.* at 3.) According to the submissions of the government, 149 restitution orders have been issued for L.S.

The restitution packet submitted by L.S. does not include any up-to-date information, *i.e.*, what losses were sustained after the instant offense and makes no reference to any of the analysis outlined in *Paroline*. The psychological and monetary data that has been provided is dated July 1, 2010, which is before L.S.'s images were posted on the KOFD board. The absence of information regarding costs incurred after the offense conduct in this case leaves the Court with no reasonable basis for calculating those losses fairly attributable to the defendants here. *See United States v. Gamble*, 709 F.3d 541, 554 (6th Cir. 2013) ("As a logical matter, a defendant generally cannot cause harm prior to the date of his offense."); *Galan*, at *7 (denying restitution request on basis of outdated and generalized cost assessments). Although there is a letter from L.S.'s mother describing the sort of losses her child has suffered through the spread of her images and although the report submitted by Sharon W. Cooper, M.D., states that L.S. "will continue to suffer mental, emotional and psychological damage for the rest of her life as a direct consequence of the actions of those who download, trade

and possess her pornographic images," (Report at 13), this is insufficient to overcome the lack of specific losses attributable to the conduct of these defendants. *See Galan*, at *8. Even if the Court were to accept the amounts included under Exhibit A, "Medical and Mental Health Cost Analysis," there is no indication of the temporal breakdown of such costs (whether they are for past or future treatment), and the request of $150,000 appears entirely arbitrary as it is not based on the defendants' relative causal role. Accordingly, L.S.'s request for restitution is denied.

### C. Angela is awarded restitution in the amount of $29,859.00.

Once the general losses are determined, it is necessary to determine the defendants' relative role in bringing about these losses. As an initial matter, this case is different from that presented to the Court in *Paroline*. In *Paroline*, as well as in many decisions since, an individual defendant was convicted of an individual crime, such as receipt, possession, or distribution. Here, the defendants have been convicted of conspiracy to advertise child pornography, 18 U.S.C. § 2251(d) & (e). The causal role in question is thus that of the conspiracy as a whole. *See Laney*, 189 F.3d at 965 ("the harms the offense caused may include not only those resulting from the defendant's individual actions, but also others caused by the conspiracy itself"); *United States v. Nosal*, 2014 WL 2109948, at *6 n. 1 (N.D. Cal. May 20, 2014) (stating that "there is a long line of authority recognizing that a defendant convicted of a conspiracy can be called to account through restitution

for all losses occasioned by the conspiracy," and noting that *Paroline* does not change this).

*Paroline* outlines a number of factors that bear on the relative causal significance of the defendants' conspiratorial conduct in producing general losses, including:

> a. Number of past criminal defendants found to have contributed to the victim's general losses;
> b. Reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses;
> c. Any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted);
> d. Whether the defendant reproduced or distributed images of the victim;
> e. Whether the defendant had any connection to the initial production of the images;
> f. How many images of the victim the defendant possessed; and
> g. Other facts relevant to the defendant's relative causal role.

134 S. Ct. at 1728. *Paroline* does not require a court to consider all of these factors, but asks courts to look to those that are known in fashioning a restitution award.

Case law reveals two approaches to aid in determining how much of a victim's general losses a defendant is responsible for; one is outlined in *Gamble*, 709 F.3d 541, and the other in *United States v. Kearney*, 672 F.3d 81 (1st Cir. 2012). Under the *Gamble* calculation, a court takes the amount of general losses (as determined in Section (B)(1) above) and divides that number by the number of

12

restitution orders that have previously been entered. Here, post-*Paroline* restitution orders have been entered in 19 previous cases involving Angela. For Angela, that would mean taking her total loss of $476,500 and dividing it by 19, resulting in an apportionment of general losses of $25,078.95.

Under the *Kearney* approach, a court determines the average amount of prior restitution awards, discarding the highest and the lowest, and then considers that amount against the total losses and adopts it if it is proportional and reasonable in light of the total losses. At least one court has modified this approach to use the median restitution award when considering past awards. *See Miner*, at *11. The *Kearney* approach seems inappropriate, however, in light of *Paroline*. *Paroline* effectively restructured restitution awards in the realm of child pornography and, in doing so, rejected the way in which many of those awards were determined. It does not make sense to then use potentially pre-*Paroline* awards or awards that may not comport with *Paroline* as the basis for determining future awards. Therefore, what is used here is the general loss attributable to the defendants in this case resulting from the *Gamble* calculation, or $25,078.95.

There is no information on which to reasonably predict future offenders, a reality recognized by the Supreme Court, which has stated: "most of whom will, of

13

course, never be caught or convicted." *Paroline*, 134 S. Ct. at 1728. That said, the other factors provided in *Paroline* inform our understanding of the conspiracy's relative causal role. For example, one image of the victim (of 3,400+ child pornography images present on the board as a whole) was posted to a forum on the KOFD board. The thread in which the image was contained was viewed 29 times, although it is unclear by whom it was viewed or if there were multiple views by one or more users. No evidence has been presented connecting any of the defendants with the initial production of the image, which the record attributes to the biological father of the victim. As these factors do not show a need to impose a greater award of restitution than those general losses attributable to the conspiracy and the attorneys' fees related directly to this case, the total losses caused by the KOFD conspiracy are $29,859.15 ($25,078.95 in general losses plus $4,780.20 in attorneys' fees), or approximately $29,859.00.

As this case involves more than one defendant and the offense of conviction is conspiracy, the defendants are jointly and severally liable for this amount. *See Hughey v. United States*, 495 U.S. 411, 413 (1990) (holding that an award of restitution is only for the loss caused by the specific conduct that is the basis of the offense of conviction). Section 2259 states that "[a]n order of restitution under this section shall be issued and enforced in accordance with section 3664 in the

same manner as an order under section 3663A." 18 U.S.C. § 2259 (b)(2). Pursuant to subsection (h) of 18 U.S.C. § 3664, "[i]f the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's losses and economic circumstances of each defendant." As discussed above, because the defendants have all been convicted as part of a conspiracy and are all accountable for the images present on the KOFD board as a whole, joint and several liability for the victim's loss is appropriate. Victim "Angela" is awarded restitution in the amount of $29,859.00, for which the defendants are jointly and severally liable.

Dated this 24th day of October, 2014.

Donald W. Molloy, District Judge
United States District Court